**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:    **MEDFORCE MANAGEMENT, LLC
D/B/A WILLOW CREEK RETIREMENT CENTER    CASE NO. 05-00150**

# DISCLOSURE STATEMENT

## ARTICLE I.

## INTRODUCTION

Medforce Management, LLC d/b/a Willow Creek Retirement (the "Debtor" or "Debtor-in-Possession") filed its Voluntary Petition ("Petition") for reorganization pursuant to Chapter 11 of the United States Bankruptcy Code with the United States Bankruptcy Court for the Southern District of Mississippi, Jackson Divisional Office, on January 10, 2005.

The Debtor provides this Disclosure Statement to all of the known creditors in this case in order to disclose information deemed by the Debtor to be material, important and necessary for the creditors to arrive at a reasonably informed decision in exercising rights to vote for acceptance of the Plan of Reorganization (the "Plan") filed contemporaneously herewith.

This Disclosure Statement has been prepared by, and is submitted by and on behalf of, the Debtor. A Disclosure Statement must be approved by the Court, after notice and a hearing, prior to solicitation of acceptances for the Plan.

The information contained in this Disclosure Statement is made as of the date hereof, unless another time is specified. Neither the delivery of this Disclosure Statement, nor any exchange of rights and information made in connection herewith, nor any act in reliance hereon, should create under any circumstances an implication that there has not been a change in the facts underlying the statements set forth herein.

No representations concerning the Debtor, the extent of its liabilities, the value of its properties and assets, or the value of any distributions offered to holders of claims or investor interests in connection with the Plan, are authorized except as specifically denominated in this Disclosure Statement.

This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan, and nothing contained herein will constitute an admission of any fact or liability, or be admissible in any proceeding involving the Debtor or any other party, or be deemed to be advice on the tax or other legal effects of the Plan.

## EXPLANATION OF CHAPTER 11 AND PLAN CONFIRMATION

Chapter 11 is the principal reorganization chapter of the Bankruptcy Code. The formulation and confirmation of a reorganization plan is the primary goal of a Chapter 11 case. A reorganization plan is the vehicle for satisfying, to the extent possible, the claims against and investor interests in the Debtor.

Holders of claims and investor interests whose claims or investor interests are impaired by the Plan are afforded the opportunity to vote to accept or reject the Plan. A class of claims or investor interests is impaired if the claims or investor interests constituting that class are not paid in full or if the claims or investor interests are affected by the Plan. The court will determine whether the impaired classes have accepted the Plan by determining whether sufficient acceptances have been received from the holders of claims in such classes. An impaired class of claims will be determined to have accepted the Plan if the holders of allowed claims in that class casting votes in favor of the Plan (i) hold at least two-thirds in amount of the allowed claims of the holders in such class who actually vote on the Plan and (ii) comprise more than one-half the number of holders of the allowed claims in such class who actually vote on the Plan.

2

The vote of the class binds all members of the class. Thus, if a class votes to accept the Plan, the provisions of the Bankruptcy Code designed to protect rejecting classes cannot be invoked even by members of that class who voted to reject the Plan. Conversely, if a class rejects the Plan, the member of such class who voted to accept the Plan will be deprived of the benefits of the Plan if not confirmed. Each subclass is treated as a separate class for voting purposes.

The Bankruptcy Code does not require that every class of claims and investor interests vote in favor of the Plan. The Plan, however, must be accepted by at least one class of holders of claims or investor interests impaired under the Plan. The Court may confirm a Chapter 11 Plan notwithstanding the rejection of the Plan by one or more classes of claims or investor interests in what is inelegantly referred to as a "cram-down." The criteria under which the Court may confirm the Plan over the objection of one or more classes of claims or investor interests are set forth in Section 1129(b) of the Bankruptcy Code and, among other requirements, include the requirement that the Court find, with respect to each class that does not accept the Plan, that the Plan does not discriminate unfairly against such class, that the Plan is fair and equitable as to such class, and that the value or benefits to be distributed to the members of such class will not be less than the members of that class would receive if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code. The treatment proposed by the Debtor for certain holders of Claims not accepting the Plan is detailed in another Article of the Plan.

The Debtor believes that the Plan as proposed satisfies all of the statutory requirements imposed by Section 1129 of the Bankruptcy Code. Any objections to the Plan filed and prosecuted by a party in interest, however, may prevent or delay confirmation if the court allows the objection, or appeals of a denial of an objection are pursued.

3

## ARTICLE II.

## DEFINITIONS

A.    The following definitions apply to the Disclosure Statement and to all exhibits

accompanying the Disclosure Statement:

1.    **"Allowed Claim"** means, as against the Debtor:

(a).    A claim that has been allowed by final Order of the Bankruptcy Court, or

(b).    A claim (i) scheduled as liquidated, undisputed and non-contingent by the

Debtor in schedules as they may be restated, amended or supplemented, or

(ii) timely filed with the Clerk of the Bankruptcy Court against which

either there has been no objection made to the allowance thereof within

the period of time fixed by the Bankruptcy Code, the Bankruptcy Rules or

a final Order of the Bankruptcy Court, or which has been allowed in

whole or in part by a final Order of the Bankruptcy Court after either an

objection to the claim or an amendment of the Schedules.

2.    **"Allowed Secured Claim"** means the allowed claim of a secured creditor to the

extent that it is secured by a lien on property in which the Debtor has an interest as provided in

Sections 506(a) and (b) of the Bankruptcy Code.

3.    **"Affiliate"** shall have the meaning set forth in Section 101 (2) of the Bankruptcy

Code.

4.    **"Bankruptcy Code"** or **"Code"** means Title 11 of the United States Code, as

amended and effective in the Southern District of Mississippi on the date the Disclosure

Statement is filed with the Court and includes, where applicable, the Bankruptcy Rules then in

effect.

4

5.      **"Bankruptcy Court"** or **"Court"** means the United States Bankruptcy Court for the Southern District of Mississippi exercising jurisdiction over this Chapter 11 reorganization case and any and all proceedings therein.

6.      **"Claim"** is defined in Bankruptcy Code Section 101 (4).

7.      **"Closing"** means the consummation of the transactions contemplated by the Plan.

8.      **"Confirmation"** means the date the Court enters an order confirming this Plan.

9.      **"Creditor"** is defined in Bankruptcy Code Section 101 (9).

10.     **"Debtor"** or "Debtor-in-Possession" means the Debtor.

11.     **"Effective Date of the Plan,"** or **"Effective Date,"** means ninety (90) days after entry of an Order Confirming Plan of Reorganization in this Chapter 11 case becomes final and non-appealable.

12.     **"Existing Loan and Security Documents"** means promissory notes, mortgages, security agreements, guaranties, financing statements, and related documents evidencing the security interests of a fully secured creditor or partially secured creditor.

13.     **"Final Order"** means any order of the Court which is no longer subject to appeal or review.

14.     **"Fully Secured Creditor"** means any secured creditor designated as such in the Disclosure Statement whose allowed claim is less than the value of the collateral securing its claim.

15.     **"Partially Secured Creditor"** means any secured creditor designated as such in this Disclosure Statement whose allowed claim is greater than the value of the collateral securing its claim.

5

16.     **"Plan"** means a Plan of Reorganization filed by the Debtor and as it may be modified, reinstated and amended from time to time.

17.     **"Debtors"** mean the Debtor-in-Possession.

18.     **"Pro-Rata"** means the same proportion that a claim or an allowed claim in a particular class bears to the aggregate amount of all claims or allowed claims in said class.

19.     **"Reinstatement"** or **"Reinstated,"** as that term is used herein in reference to Existing Loan and Security Documentation means payment and performance within a reasonable time sufficient to cure all monetary defaults (except that no payment shall be required to cure defaults on account of nonpayment of default rate of interest, attorneys' fees, costs of collection or penalties for fully secured creditors that accept this Plan), and the continuance of the rights and obligations of the parties to the loan and security documentation after confirmation in accordance with their terms.

20.     **"Reorganized Debtor or Debtor-in-Possession"** mean Debtor and this Chapter 11 case after confirmation and closing.

21.     **"Schedules"** means the Statement of Financial Affairs, the Schedules of debts and assets, and the statement of executory contracts filed by Debtor with the Bankruptcy Court in these cases, as amended, reinstated or supplemented from time to time.

22.     **"Secured Creditor"** means those creditors which possess  valid and perfected liens against any assets of the Debtor, including, but not limited to, fully secured creditors and partially secured creditors.

23.     **"Unsecured Claim"** means an allowed claim for which no property of Debtor or Debtor's estate serves as security or collateral.

6

24.    **"Unsecured Creditor"** means a person, corporation, partnership or other entity that holds an unsecured claim against the Debtor.

### ARTICLE III.

### THE DEBTOR

**A.    The Debtor's History and Background.**

The Debtor operates Willow Creek Retirement Center ("Willow Creek"), an 88-bed skilled nursing facility located at 49 Willow Creek Lane in Jackson, Mississippi, which offers 24-hour skilled nursing services which meet all State and Federal Regulations. Willow Creek also offers rehabilitation such as physical therapy, occupational therapy, speech therapy, as well as respiratory care therapy, internal therapy, infusion therapy, pain management and restorative care. Willow Creek meets all the necessary requirements of Medicaid, Medicare and Mississippi State Board of Health licensure and certification.

Willow Creek was leased from Star Enterprise, LLC d/b/a Willow Creek Retirement Center on February 1, 2002, by Medforce Management, LLC. The lease was for one year, with an automatic renewal. Medforce Management, LLC, the operator of Willow Creek, is comprised of two members: Larry N. Fortenberry and Larry D. Russell.

The primary factor in the Debtor's decision to file bankruptcy was the excessive deductible on the Debtor's liability insurance coverage. The Debtor was under the impression that its deductible was $25,000 per claim; however, without its knowledge and approval the deductible was increased to $250,000 per claim, an unattainable deductible for the Debtor to pay once it had been served with a claim, therefore requiring it to file bankruptcy. Since Willow Creek operates primarily on Medicaid and Medicare funds, cash flow became a serious problem.

**B.     The Chapter 11 Reorganization and its Significant Events.**

The Debtor employed counsel, attended the 341(a) hearing, has filed its Monthly Operating Reports and paid its U. S. Trustee fees.

Certain personal injury claimants have sought relief from the automatic stay, and the Debtor is going to continue to review its insurance coverage situation with respect to those claimants.

**C.     Claims Against the Debtor.**

In order to evidence the claims against the Debtor, the Debtor attaches a copy of Schedule "F" which contains the claims of unsecured creditors (the Debtor has no secured creditors) as Exhibit "A" hereto. It should be noted that the Debtor did not list any unsecured priority creditors, but the Division of Medicaid filed a Proof of Claim for $844,085.83, which will be addressed in the proposed Plan.

**D.     Assets of the Debtor.**

In order to indicate the assets of the Debtor at the time the case was filed, the Debtor has attached a copy of Schedule B (the Debtor owns no real property) as Exhibit "B" hereto.

Furthermore, the Debtor-in-Possession owns all "avoidance" and "turnover" causes of action granted to a Trustee or Debtor-in-Possession by the Bankruptcy Code, including, but without limitation, all open account claims, preferential transfers, fraudulent conveyances and post-petition avoidance causes of action. At present, the Debtor is investigating whether any of these causes of action exist, and to the extent that these causes of action may exist in favor of the Debtor-in-Possession, the Debtor will pursue these claims and causes of action post-confirmation. The Court will retain jurisdiction of these claims and causes of action, post-confirmation, and any recovery thereunder will be for the benefit of the Debtor, less all costs of litigation and collection, for the benefit of unsecured creditors.

8

In addition, to the extent the Debtor has or owns a viable cause of action against its insurance agent (as discussed in The Debtor's History and Background), it will be pursued, post-confirmation, for the benefit of the unsecured creditors.

### E.      The Concept of the Plan.

The Debtor will continue to operate its nursing home facility, in the ordinary course of business, pending further developments in the case. The Debtor will ask the Court to estimate (for voting purposes) all outstanding personal injury claims, as well as to evaluate its insurance coverages in connection with those claims, as part of the Plan process.

The Debtor will pay any secured claims it has over time and will "share" its net operating revenues, if any, with its unsecured creditors.

### ARTICLE IV.

### CLASSIFICATION OF CLAIMS

CLASS 1:      Administrative Expense Claims.

CLASS 2:      Priority Tax Claims.

CLASS 3:      Unsecured Priority Claims of the Division of Medicaid.

CLASS 4:      General, Unsecured Claims.

### ARTICLE V.

### TREATMENT OF CLAIMS AND INTERESTS

The Claims as classified in Article IV shall be satisfied as follows:

### CLASS 1:  Administrative Expense Claims.

This class consists of the administrative expenses and claims of professionals and of the United States Trustee under §503(b) of the Bankruptcy Code and all fees and charges assessed against the Debtor under Title 28 of the United States Code. The compensation of professionals,

9

such as attorneys and accountants, is subject to approval by the Court. The timing of payment to

such professionals for compensation for services rendered and reimbursement of expenses will

be made as authorized and allowed by the Court. The Court will review all requests for

compensation and reimbursement of expenses.

All Class 1 expenses and claims for fees will be paid as provided for in future court

orders, or as may be agreed upon, except that fees due to the Office of the United States Trustee

will be paid as and when due.

### CLASS 2: Priority Tax Claims

There are no priority tax claims, and the claims of Medicaid will be addressed by separate

classification.

### CLASS 3:     Unsecured Priority Claim of the Division of Medicaid.

Medicaid has filed a priority claim of $844,000.00. The Debtor disputes the claim and

will ask the Court to determine the amount Medicaid is owed, if any.

In order to satisfy the claim, the Debtor will amortize the debt of Medicaid over a 72-

month period, commencing upon the Effective Date of the Plan, and pay the same in monthly

installments.

The claim of the Division of Medicaid is impaired under the Plan.

### CLASS 4:     General, Unsecured Claims.

Unsecured creditors shall receive the Debtor's net operating income for three years

commencing upon the Effective Date of the Plan.

### ARTICLE VI.

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

The Debtor will assume or reject executory contracts by separate Motion to be heard at

the same time the confirmation is heard.

## ARTICLE VII.

### LEGAL BINDING EFFECT OF PLAN;
### DISCHARGE OF CLAIMS AND INTERESTS

Confirmation of a Plan will discharge the Debtor from all debts and claims, pre- and

post-confirmation, and other debts and claims except as provided for in the Plan, the Order

confirming the Plan, or the Bankruptcy Code; confirmation vests all property of the Debtor's

estate in the reorganized Debtor, free and clear of all liens and claims and interests of creditors

and binds the Debtor, creditors, and other parties regardless of whether they have accepted the

Plan.

## ARTICLE VIII.

### MODIFICATION OF THE PLAN

The Debtor may amend or modify the Plan at any time prior to the entry of an Order

confirming the Plan without the approval of the Court. Subsequent to the entry of the Order

confirming the Plan, the Debtor may modify the Plan before substantial consummation of the

Plan with the approval of the Court.

## ARTICLE IX.

### RETENTION OF JURISDICTION

Subsequent to confirmation of the Plan, the court will retain jurisdiction to hear and

determine all claims against the Debtor and to hear and to enforce all causes of action which

exist on behalf the Debtor, including, without limitation, all turnover and avoidance causes of

action granted to the Debtor-in-Possession and that will be owned and pursued by the Debtor-in-

Possession, post-confirmation under the Bankruptcy Code. The Court will also retain

jurisdiction to construe and apply the provisions of the Plan, including the administration and

11

implementation of the Plan, to enter orders in aid of consummation of the Plan, to effectuate the

abandonment of assets, if necessary, to issue any orders in connection with the Plan in these

proceedings, to hear and decide applications for compensation and reimbursement of expenses,

to resolve objections to claims, adversary proceedings, and matters pending independently of the

Plan and to close the Chapter 11 case.

## ARTICLE X.

### FEASIBILITY OF THE PLAN

The Debtor submits the Plan is feasible, based upon reasonable cash flow assumptions

and assumptions concerning the Debtor's ability to maintain a stable level of patients.

However, if the Medicaid claim is allowed in full (or increased) there will be only

nominal distributions to unsecured creditors.

## ARTICLE XI.

### LIQUIDATION ANALYSIS AND PLAN ALTERNATIVES

The Debtor estimates that its assets, at liquidation, would generate little, if any,

meaningful distribution to unsecured creditors due to the costs and expenses associated with

liquidation of the assets, the payment of administrative expenses, and the payment of the allowed

Medicaid priority claims.

The Debtor has essentially provided a liquidation analysis of the claims of various

creditors in its Classification of Claims and Treatment of Claims and Interests sections of the

Disclosure Statement. The Debtor submits that in light of the priority claims herein, that any

Chapter 7 liquidation herein would not yield any distribution to unsecured creditors once the

priority claims of Medicaid are satisfied, as well as the administrative claims of the proceeding

herein. Consequently, the Debtor submits that the reorganization as outlined herein is the only manner in which to yield any dividend to unsecured creditors herein.

Further, in a Chapter 7 proceeding, a trustee would be appointed. Such appointment would mean that there would be additional Chapter 7 administrative claims, including payment of the trustee's fees and payment of the professionals retained by the trustee. Therefore, if the case were converted to a Chapter 7 liquidation, the distribution to the unsecured creditors would be reduced accordingly, and would most likely result in no distribution to unsecured creditors. The Debtor believes that confirmation and implementation of the Plan is preferable to any of the alternatives described herein. It will provide a greater return to creditors than any other alternative, and any other alternative will involve significant delay, uncertainty and additional administrative costs.

## ARTICLE XII.

## TAX CONSEQUENCES

The tax consequences resulting from Confirmation of the Plan can vary greatly. Significant tax consequences may occur as a result of confirmation of the Plan under the Internal Revenue Code and pursuant to state, local and foreign tax statutes. No specific tax consequence to any creditor is represented, implied, or warranted. Each holder of a claim or investor interest should seek professional tax advice, including the evaluation of recently enacted and pending legislation, because recent changes in taxation are apartment complex and lack authoritative interpretation.

**THE DEBTOR ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INVESTOR INTEREST. HOLDERS OF CLAIMS AND INVESTOR**

INTERESTS ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS
CONCERNING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX
CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.

## ARTICLE XIII.

### SOLICITATION OF ACCEPTANCES FOR THE PLAN

Although this Disclosure Statement provides information regarding the assets, liabilities
and general financial posture of the Debtor and the potential benefits that might accrue to holders
of Claims and Interests in the Debtor upon Confirmation of the Plan, the Disclosure Statement
neither guarantees nor purports to represent the amount or percentage of each Allowed Claim
that would be realized under the Plan. Despite this uncertainty, which is inherent in any Plan,
the Debtor believes that the Plan will provide each holder of a Claim with an opportunity to
receive greater benefits than any other alternative.

As explained more fully herein above, before the Plan may be confirmed by the Court,
the Court must find that the criteria set forth in the Bankruptcy Code have been met, including
the requirement that the Plan must be accepted by an impaired class.

## ARTICLE XIV.

### UNITED STATES TRUSTEE'S FEES

The Debtor's Plan, pursuant to 28 U.S.C. § 1930(a)(6), provides payment to the United States
Trustee of the appropriate sums required for all disbursements made by the Debtor during the
Chapter 11 proceeding. In addition, the Plan provides that the Debtor will make payments to the
United States Trustee of the appropriate sums required for all disbursements made by the Debtor
pursuant to the terms of the Plan, including the payment of pre- and post-confirmation quarterly fees
as required by 11 U.S.C. § 1129(a)(12).

14

## ARTICLE XV.

## CONCLUSION

In order for the Bankruptcy Court to confirm the Plan, the Code requires, among other things, that the Plan be proposed in good faith; that the Debtor disclose specified information concerning payments or promises to insiders; that the Plan comply with the applicable provisions of Chapter 11 of the Bankruptcy Code; that, if there is one impaired class of creditors, at least one impaired class of claims accepts the Plan; that confirmation of the Plan is not likely to be followed by the need for further reorganization or liquidation of the reorganized debtors; that the Plan is in the best interest of each dissenting creditor and that the Plan is fair and equitable to, and does not discriminate unfairly against, each non-accepting class of impaired claims. Debtor believes that each requirement has been met, and Debtor urges you to accept the Plan.

THIS, the ___3 PM___ day of August, 2005.

Respectfully submitted,

MEDFORCE MANAGEMENT, LLC D/B/A
WILLOW CREEK RETIREMENT CENTER

By Its Attorneys

HARRIS & GENO, PLLC

By _____
Craig M. Geno, Esq.

OF COUNSEL:

Craig M. Geno, Esq. - MSB No. 4793
Jeffrey K. Tyree, Esq. - MSB No. 9049
Melanie T. Vardaman, Esq. - MSB No. 100392
HARRIS & GENO, PLLC
587 Highland Colony Parkway
P.O. Box 3380
Ridgeland, MS 39158-3380
Telephone: (601) 427-0048
Facsimile:   (601) 427-0050
F:\Users\Bankrupt\Daleson & Medforce\Medforce.Willow Creek\Plan, D. Statement\D. Statement.wpd

## CERTIFICATE OF SERVICE

    I, Craig M. Geno, do hereby certify that I have this date mailed, postage prepaid, a true and correct copy of the above and foregoing to the following:

    Ronald H. McAlpin, Esq.
    Office of the United States Trustee
    Suite 706, A. H. McCoy Federal Building
    100 West Capitol Street
    Jackson, MS   39269

THIS, the __3ʳᵈ__ day of August, 2005.

_____
Craig M. Geno

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center          Chapter 11; Case No. 05-00150 JEE

# ***AMENDED SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and account number, if any, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐ Check here if debtor has no creditors holding unsecured non priority claims to report on this Schedule F.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE | CODEBTOR | H, W, J, OR C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Adams Produce of Jackson<br>P. O. Box 83137<br>Jackson, MS 39283-3137 | | | | | | | ***$53.62 |
| Alpha Janitorial & Paper Supply<br>5360 Hwy. 49 South, Suite 30<br>Hattiesburg, MS 39401 | | | | | | | 151.98 |
| ***American Medical Response<br>P. O. Box 198408<br>Atlanta, GA 30384 | | | | | | | ***345.00 |
| ***Busby Office Supply & Printing<br>526 E. College St.<br>Clinton, MS 39056 | | | | | | | ***218.73 |
| ***Byram Business Association<br>P. O. Box 720732<br>Byram, MS 39272 | | | | | | | ***25.00 |
| Career Builder, LLC<br>13047 Collection Center Drive<br>Chicago, IL 60693-0130 | | | | | | | 625.00 |
| ***Caronia Corporation<br>21498 Network Place<br>Chicago, IL 60673 | | | | | | | ***104.00 |



EXHIBIT

A

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center       Chapter 11; Case No. 05-00150 JEE

## ***AMENDED SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| ***Central MS Medical Center<br>1850 Chadwick Drive.<br>Jackson, MS 39204 | | | | | | | | ***1,054.74 |
| Dairy Fresh of Alabama, LLC<br>Attn: Jeanne Stewart<br>7572 Hwy 49 North<br>Hattiesburg, MS 39402 | | | | | | | | ***599.56 |
| Direct Supply Equipment<br>Box 88201<br>Milwaukee, WI 53288-0201 | | | | | | | | ***1,885.14 |
| Earthgrains Baking Co`s Inc.<br>7448 Collection Center Drive<br>Chicago, IL 60693 | | | | | | | | **40.72 |
| First Choice Medical Supply<br>P. O. Box 720489<br>Byram, MS 39272 | | | | | | | | ***5,808.78 |
| Good Samaritan Personnel Services<br>1202 Canterbury Lane<br>Clinton, MS 39056 | | | | | | | | 275.50 |
| ***Barbara Huffmaster,<br>   Conservator of Kathryn Hill<br>c/o David E. Rozier, Jr., Esq.<br>Adams and Reese, LLP<br>Post Office Box 24297<br>Jackson, MS 39201-4297 | | | | | X | X | X | ***Unspecified in<br>Complaint |
| ***Johnson Diversey, Inc.<br>8310 - 6th Street<br>Sturtevant, WI 53177 | | | | | | | | ***794.50 |
| ***Labcorp<br>231 Maple Avenue<br>Burlington, NC 27215 | | | | | | | | ***556.70 |
| Massey Higginbotham & Vise<br>P.O. Box 13664<br>Jackson, MS 39236 | | | | | | | | 399.52 |
| Maxim Healthcare Services<br>12559 Collections Center Drive<br>Chicago, IL 60693 | | | | | | | | ***462.00 |

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center     Chapter 11; Case No. 05-00150 JEE

### ***AMENDED SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| ***Mary Owens, by and through Linda Blue, her next friend, for the use and benefit of Mary Owens c/o Brad Williams, Esq. Grenfell, Sledge and Stevens, PLLC P. O. Box 16570 Jackson, MS 39236 | | | | X | X | X | ***Unspecified in Complaint |
| ***Polk's Discount Drugs 7273 Siwell Road Jackson, MS 39212 | | | | | | | ***12.00 |
| Portable Medical Diagnostics 840 US Hwy. 1, Suite 210 North Palm Beach, FL 33408 | | | | | | | 434.64 |
| ***Positive Promotions, Inc. 15 Gilpin Avenue Hauppauge, NY 11788 | | | | | | | ***23.16 |
| Promissor, Inc. P. O. Box 13785 Philadelphia, PA 19101 | | | | | | | 25.00 |
| Quality Chemical & Supply P. O. Box 16168 Jackson, MS 39236 | | | | | | | 389.80 |
| Raytel Cardiac Services 7 Waterside Crossing Windsor, CT 06095 | | | | | | | 126.00 |
| ***Rotary Club of South Jackson Hinds County P. O. Box 7253 Jackson, MS 39282 | | | | | | | ***157.50 |
| Rx Solutions 5315 Old Hwy 11, Ste. 4 Hattiesburg, MS 39402 | | | | | | | ***24,077.58 |
| ***S. N. Thomas' Sons, Inc. P. O. Box 3809 Jackson, MS 39207 | | | | | | | ***76.24 |
| Simplex Grinnell 181 Davis Johnson Drive, Suite C Richland, MS 39218 | | | | | | | 174.41 |

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center          Chapter 11; Case No. 05-00150 JEE

## ***AMENDED SCHEDULE F – CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS
(Continuation Sheet)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Summit Health & Rehab Svcs<br>Attn: Joyce Bates<br>P. O. Box 2377<br>McComb, MS 39649 | | | | | | | 38,538.79 |
| Withers Greenhouse Florist<br>3130 Terry Road<br>Jackson, MS 39212 | | | | | | | ***141.78 |
| TOTAL | | | | | | | ***Unknown |

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center    Chapter 11; Case No. 05-00150 JEE

## ***AMENDED SCHEDULE B – PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C – Property Claimed as Exempt.

**Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G – Executory Contracts and Unexpired Leases.**

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 1. Cash on hand. | X | | | |
| 2. Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | | AP - BankPlus, Byram, MS<br>Operating Account - BankPlus, Byram, MS<br>Payroll Account - BankPlus, Byram, MS<br>Resident Trust Fund (in trust for residents) - BankPlus, Byram, MS | | $(9,561.00)<br>478.00<br>7,792.00<br>11,124.15 |
| 3. Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. Household goods and furnishings, including audio, video, and computer equipment. | | Equipment, furniture, computers, 49 Willow Lane, Byram, MS | | app. $40,000.00 (does not reflect fair market or orderly liquidation value) |



EXHIBIT
B

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center          Chapter 11; Case No. 05-00150 JEE

## ***AMENDED SCHEDULE B – PERSONAL PROPERTY

(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 5. Books, pictures and other art objects; antiques; stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. Wearing apparel. | X | | | |
| 7. Furs and jewelry. | X | | | |
| 8. Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interest in IRA, ERISA, Keough, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interest in incorporated and unincorporated businesses. Itemize. | X | | | |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center          Chapter 11; Case No. 05-00150 JEE

## ***AMENDED SCHEDULE B -- PERSONAL PROPERTY

(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 14. Government and corporate bonds and other negotiable and non-negotiable instruments. | X | | | |
| 15. Accounts receivable. | | From residents, Medicaid, Medicare, and third party insurance coverage | | $313,854.13 (face value; does not reflect collectibility) |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and non-contingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center          Chapter 11; Case No. 05-00150 JEE

## ***AMENDED SCHEDULE B -- PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | | ***Potential Claims against Fox Everett, Inc. regarding issues related to insurance coverage | | ***Unknown |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | | Included in 4. | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | | Included in 4. | | |

Page 4

In Re: Medforce Management, LLC d/b/a Willow Creek Retirement Center          Chapter 11; Case No. 05-00150 JEE

## ***AMENDED SCHEDULE B -- PERSONAL PROPERTY
(Continuation Sheet)

| TYPE OF PROPERTY | NONE | DESCRIPTION AND LOCATION OF PROPERTY | HUSBAND, WIFE, JOINT OR COMMUNITY | CURRENT MARKET VALUE OF DEBTOR'S INTEREST IN PROPERTY, WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION |
|---|---|---|---|---|
| 28. Inventory | X | | | |
| 29. Animals. | X | | | |
| 30. Crops -- growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. Itemize. | X | | | |
| | | | TOTAL | ***Unknown |